{¶ 143} I respectfully dissent from the majority's decision. The record shows that the children were originally removed from mother because of problems primarily resulting from her drug addiction. In July 2002, after mother's successful recovery from a drug addiction relapse and satisfactory completion of the case plan designed by LCCS, the family was finally being reunified.
 {¶ 144} The record shows that until mother began seeing Fred H., LCCS was willing to return the children based upon mother's improvement and correction of the problems causing the children's removal. Mother had accomplished what many drug addicts cannot — she had been drug-free for more than two years and showed a high commitment to staying sober. She had attended parenting classes, had been in counseling, and was deemed ready to reunify with her children. Two of the children had even been placed back in the home. The majority has gone to great lengths in detailing appellant's life and lifestyle prior to her involvement with Fred. Since LCCS was obviously willing to return the children, any evidence about her progress up through July 2002 is simply irrelevant to her fitness as a parent after her involvement
with Fred. No evidence was presented that mother's behavior or actions toward her children changed because of her relationship with Fred. Nothing indicates that the children were ever in any actual risk of harm or that mother was "cavalier" about her choices. On the contrary, unlike her previous relationships, mother married Fred and was attempting to make a stable family environment for her children and the couple's new baby, which was born drug-free.
 {¶ 145} Nevertheless, on the basis of what the record shows to be hearsay and allegations, LCCS stopped plans for reunification, removed the children, and sought permanent custody. LCCS had required mother to agree to a "safety plan" after her involvement with Fred, deeming him to be a threat to her children. The plan permitted no contact between Fred and either mother or the children. The basis for the safety plan was Fred's California sexual offender conviction which occurred sometime in the 1970's and more recent allegations involving the sexual abuse of a four or five year-old daughter of Fred's former girlfriend. The true nature and circumstances of the old California sex offense were never made clear and the evidence was hearsay-on-hearsay — information presented by the investigator from his phone call made to a California court clerk. Upon being advised that a warrant existed in California for unexplained matters relating to the California charge, Fred turned himself in to law enforcement authorities. The California authorities did not act and thus allowed Fred to be released.
 {¶ 146} The trial court also admitted a report generated by LCCS in its "investigation" of Fred as to the allegations by the former girlfriend's daughter. Allegedly due to the child's lack of competency, no charges were filed. In addition, no dates were given and no non-hearsay evidence was presented. Since these allegations were not pursued, no opportunity was ever provided to defend the accusations. Although LCCS argued that the report was not offered for the truth of the matter asserted, this is simply without merit since the allegations were treated as if true and were, in fact, the basis for the "safety plan."
 {¶ 147} LCCS also argued that this report was still admissible as a "regularly kept business record." Even presuming that the report is a business record, the information within the record must still be shown to be sufficiently reliable and accurate to establish a basis for LCCS' actions in creating the "safety plan." No evidence was presented that Fred ever acted inappropriately with mother's children. More importantly, no evidence was presented that the children were harmed in any way by Fred. To support and justify the removal of the children, however, LCCS leapt to the conclusion that the allegations by the girlfriend's daughter, too incompetent to testify, must be valid and that Fred's small gifts of money to Pernell, one of the older children, might be "grooming." In short, based upon a 25 to 30 year old conviction and uncharged, unproven allegations, LCCS required mother to agree to the safety plan if she wanted to keep her children. Unwilling to accept LCCS' characterization of Fred, mother continued to see Fred and permitted the children to have occasional contact with him.
 {¶ 148} LCCS removed the children and stopped reunification solely because of mother's violation of the "safety plan." What the majority decision ignores is that this safety plan must be based upon a reasonable and supportable rationale. The LCCS report and other evidence presented is unverified hearsay and does not establish that Fred was a clear and present danger to the children or that mother's relationship with him was an absolute bar to reunification. Despite her dedication to staying sober and her ability to care for and parent her children, when mother did not defer to LCCS' unproven allegations, she was instantly deemed to be guilty of non-compliance and placing her own needs before those of her children. Is LCCS free to impose any conditions upon a parent (and insist on compliance) based on theories or feelings or speculation not proven with the legal certainty which we insist on in any other matter even arguably less serious than termination of a parent's relationship with his or her children?
 {¶ 149} If LCCS is concerned about the welfare of thefamily, it can and should continue to provide support services and assistance to this family after reunification, alert to any potential problems. Or, it can do what any other plaintiff, law enforcement agency or party who has the burden of proof does — develop the evidence more fully, if it exists. Instead, LCCS chose the more expedient route — adoption by the foster mother.
 {¶ 150} The majority has recognized the difficulties we face when we intrude on the family relationship. They have stated that they have focused on the needs of the children and have opined that I have focused on the mother instead. However, our legislature has recognized that the needs of the mother and the children are so inextricably bound up together that both must be considered. The Ohio Legislature has provided the means for termination of parental rights considering both and requiring that certain factors be considered. The factors to be considered as set forth in R.C. 2151.414 (E)(4) must be established by clear and convincing evidence.
 {¶ 151} Here, LCCS did not establish by clear and convincing evidence that appellant has demonstrated a lack of commitment toward her children by an unwillingness to provide an adequate permanent home for them. [R.C. 2151.414 (E) (4)] Therefore, I would hold that LCCS did not establish by clear and convincing evidence the findings required by R.C. 2151.414(B) (1)(a), that permanent custody is in the children's best interest and that they cannot be placed with either parent within a reasonable period of time.